```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

YEHUDAH TZIYON KE'ISH MIL'CHAMOT,    :

                    Plaintiff,       :    15 Civ. 108 (PAE)(HBP)

     -against-                       :    REPORT AND
                                          RECOMMENDATION
NEW YORK CITY HOUSING AUTHORITY,     :

                    Defendant.       :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

This matter was referred to me to determine whether plaintiff was competent and whether counsel should be appointed for plaintiff. I respectfully recommend that plaintiff be found competent.[1] I further recommend mea sponte that this matter be dismissed on the ground that the parties agreed to a settlement on the record on September 15, 2016, and defendant has complied with its obligations under that agreement. In light of my second

---

[1] It is unclear whether a Magistrate Judge has the authority to rule on a litigant's competency. United States v. Nunez, 00-CR-199S, 2013 WL 1773627 at *1 n.1 (W.D.N.Y. Mar. 8, 2013) (addressing a criminal defendant's competence to stand trial), adopted at, 2013 WL 1773583 (W.D.N.Y. Apr. 22, 2013). Thus, I shall address the issue by way of a report and recommendation.

recommendation, the issue concerning the appointment of counsel is moot.

II. Facts

Plaintiff commenced this action alleging, in substance, that his application for an apartment in public housing was improperly rejected by the New York City Housing Authority ("NYCHA"). Specifically, plaintiff alleges that NYCHA discriminated against him on the basis of his race, nationality, religion and disability. Defendant denies the allegation and states that plaintiff has not received an apartment yet because the number of applicants for NYCHA apartments far exceeds the number of available apartments, and plaintiff has not yet reached the top of the waiting list. Defendant also notes that plaintiff failed to take the steps necessary to renew his application for an apartment. The details of plaintiff's claims are set forth in more detail in the Opinion and Order of the Honorable Paul A. Engelmayer, dated February 16, 2016 (Docket Item ("D.I.") 37). In that Opinion and Order, Judge Engelmayer referred the matter to me to determine whether plaintiff is competent and whether counsel should be appointed for plaintiff.

Pursuant to Judge Engelmayer's Order, I conducted a hearing on September 15, 2016 to assess plaintiff's competence

and the possible need to appoint a guardian ad litem.  Although there is no transcript of this hearing, it was recorded on the court's digital recording system.  At the hearing I asked plaintiff a number of questions including whether he has a family, whether he was disabled, and, if so, the nature of his disability, whether he was hospitalized in the last year, where he resides, how he spends his days, whether he has a history of any substance abuse issues, whether he knew the current date and whether he knew the identities of the major candidates for president.  Plaintiff's answers to all the foregoing questions were appropriate and responsive.  Plaintiff advised that he is homeless, has no family and was formerly addicted to heroin but is now in a methadone maintenance program.  Plaintiff also stated he goes to a gym every day and described his educational and employment history.  Plaintiff stated that he had previously been diagnosed with bi-polar disorder but had not been hospitalized in the past year.

      Plaintiff also made several statements at the hearing that suggested he harbored some bizarre thoughts, including his belief that during a September 2015 visit to an emergency room, agents of the government implanted a "verichip" in plaintiff's body to track his movements.  There is also evidence in the

record that in 2011, plaintiff was found to be incompetent to stand trial in a criminal matter (see D.I. 4).

I discussed with plaintiff the possibility of appointing a guardian <u>ad</u> <u>litem</u> for him.  I advised plaintiff that if a guardian <u>ad</u> <u>litem</u> was appointed, the guardian would make independent decisions concerning the litigation, would not be required to follow any instructions that plaintiff might give and that the guardian's independent decisions would be controlling. Plaintiff was adamant that he did not want a guardian appointed and that he wanted to retain control of the litigation.

At the suggestion of defense counsel, the discussion then turned to the possibility of settlement.  Plaintiff stated in substance that his real interest was to secure a NYCHA apartment.  With confirmation from defense counsel, I explained to plaintiff that there is a long waiting list for NYCHA apartments and that applicants routinely spend many years waiting to be considered for an apartment.  NYCHA's counsel stated that there are currently more than 250,000 applicants on the waiting list for NYCHA apartments.  Plaintiff suggested that he should be given priority for an apartment, stating, in substance, that he wanted to turn his life around and would use the apartment as a place to live and study while he went back to school while other applicants would simply reside in the apartment and do nothing

else.  I explained to plaintiff that neither the Court nor NYCHA were in position to assign a value to the use a tenant would make of an apartment.  Plaintiff acknowledged that he understood what I was saying and withdrew his contention that he was entitled to a preference.

NYCHA's counsel informed plaintiff and myself that plaintiff had lost his place in NYCHA's waiting list because he had failed to comply with NYCHA's requirement that applicants reconfirm their interest in a NYCHA apartment every two years.[2] In order to settle the case, however, NYCHA offered to restore plaintiff to the position he had on the waiting list as a result of his 2013 application and to waive plaintiff's failure to reconfirm his interest in a NYYCHA apartment.  Plaintiff unequivocally expressed his willingness to settle the case on that basis.  NYCHA's counsel stated that she would provide plaintiff with a settlement agreement, and the parties agreed to dismiss the case after the settlement agreement was executed.  There was no discussion of whether the execution of the settlement agreement was a condition to the dismissal of the case or whether it

---

[2]To keep their place on the waiting list, applicants for NYCHA apartments must file a new apartment application every two years.  Applying for Public Housing, Frequently Asked Question No. 6, http//www1.nyc.gov/assets/nycha/downloads/pdf/applicant-faq.pdf.

would merely memorialize the agreement the parties reached in court.

Eleven days later, on September 26, 2016 NYCHA's counsel contacted my chambers to advise that plaintiff was refusing to sign the settlement agreement, and I scheduled a second conference for October 6, 2016 at 3:15 p.m. to attempt to resolve the issue.  Notice of the conference was provided to all parties.  As of 3:41 p.m. on the date of the conference, plaintiff had failed to appear and had not contacted my staff to explain his absence.  Because plaintiff inexplicably failed to appear, I proceeded with the conference in his absence.  At the conference, NYCHA's counsel provided me with a copy of an email plaintiff sent to counsel on September 16 in which he stated:

> Hello Ms. Raman.  It was nice meeting you yesterday.  Sorry you had to hear all of that but I made a lot of mistakes as a young kid and I spent more than half of my life behind bars.  Now I am a changed person, and I've been rebuilding my life, starting all over, and I'm being [as] positive as possible.  I was dating my doctor which is against the medical board's rules so not only was that a problem but I wanted to be completely honest with her and when I told her they had me on the list and tagged me with a verichip she broke up with me and said I needed therapy.  Thus, the reason I wanted proof so she can see it, but it doesn't matter now.  The reason I'm contacting you is please don't forget to add my name to [the] waiting list and send that settlement agreement by email or I can pick it up.  Also I want you to let the New York City Housing Authority know that I'm not going to try to sue them every time there is a problem as long as I have a place for the next eight years where I can focus on school.

6

> I will be good and problems arises in one of their buildings I will not be bringing any actions to court [sic]. And you can even put a clause into the agreement barring such actions and I will agree to it. Any conditions with the property I can fix myself or I will pay someone to fix. You have my word I will not be suing for every problem. Can you please put in a recommendation for an apartment.

NYCHA's counsel also provided me with a copy of an email plaintiff sent on September 23, 2016, in which he stated:

> I received it and I'm sorry but I don't think after serving two decades in prison I should continue to live on the streets. Your clients offer no proof why I am not eligible for housing or why I am not being given housing and by you giving me an apartment since I am permanently disabled through the social security act. This entitles me to housing through the federal funding your clients already receive, so I'll take my chances through the appellate courts, from the Second Circuit to the U.S. Supreme Court for the District of Columbia. So although I do like you as a person, but no settlement if I am not given a place. File your summary judgment motion FRCP 56. I believe once that's granted we will start the briefs for the appeals. Sorry and your order for with prejudice takes away my right to appeal.

I asked NYCHA's counsel if NYCHA was still willing to restore plaintiff to his position on the waiting list for apartments, and counsel confirmed that it was. I then advised NYCHA that if it submitted an affidavit confirming the restoration of plaintiff to his place on the waiting list, I would issue a report and recommendation recommending the dismissal of this action because it had been settled.

7

Later that afternoon, plaintiff called my courtroom deputy and advised that he had failed to appear for the conference because he suffers from esophageal cancer and was having his esophagus dilated that afternoon. He also advised that he had "changed his mind" about the settlement.

Plaintiff's only subsequent communication with the court occurred on December 7, 2015 when he submitted the following letter to the Court:

> Dear Judge Engelmayer and Ms. Rahman;
>
> Please accept this as a request in lieu of a formal motion & request to add my girlfriend and/or fianceé Carmen Echegaray on my application for housing as a joint applicant & a request for a one bedroom apartment as she will be moving to NYC with me & we should be given low income housing. Thanking you in advance! My income is $9,840 annual & hers is $19642.8 = $29,482.80.

(D.I. 49).

II. Analysis

A. Plaintiff's Competence

Rule 17(c) of the Federal Rules of Civil Procedure provides:

> **(c) Minor or Incompetent Person**.
>
> **(1) With a Representative**. The following representatives may sue or defend on behalf of a minor or an incompetent person:

> > **(A)** a general guardian;
>
> > **(B)** a committee;
>
> > **(C)** a conservator; or
>
> > **(D)** a like fiduciary.
>
> **(2) Without a Representative.** A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem -- or issue another appropriate order -- to protect a minor or incompetent person who is unrepresented in an action.

Federal courts apply the law of the state of an individual's domicile to determine competence. Fed.R.Civ.P. 17(b)(1); <u>Thomas v. Humfield</u>, 916 F.2d 1032, 1034-35 (5th Cir. 1990).

Although New York's Mental Hygiene Law provides statutory criteria by which capacity may be determined,[3] New

---

[3]New York Mental Hygiene Law Section 81.02 provides that:

> (b) The determination of incapacity shall be based on clear and convincing evidence and shall consist of a determination that a person is likely to suffer harm because:
>
> > 1. the person is unable to provide for personal needs and/or property management; and
>
> > 2. the person cannot adequately understand and appreciate the nature and consequences of such inability.
>
> (c) In reaching its determination, the court shall give primary consideration to the functional level and functional limitations of the person. Such
>
> (continued...)

York's courts seem to use a more informal standard in determining whether to appoint a guardian ad litem. In re Barbara Anne B., 51 A.D.3d 1018, 1019, 859 N.Y.S.2d 248, 249 (2d Dep't 2008) (denying application for guardian ad litem where "[t]he record demonstrate[d] that, despite her mental retardation, the mother was capable of understanding the proceedings, defending her

---

[3](...continued)
consideration shall include an assessment of that person's:

   1. management of the activities of daily living, as defined in subdivision (h) of section 81.03 of this article;

   2. understanding and appreciation of the nature and consequences of any inability to manage the activities of daily living;

   3. preferences, wishes, and values with regard to managing the activities of daily living; and

   4. the nature and extent of the person's property and financial affairs and his or her ability to manage them.

It shall also include an assessment of (i) the extent of the demands placed on the person by that person's personal needs and by the nature and extent of that person's property and financial affairs; (ii) any physical illness and the prognosis of such illness; (iii) any mental disability, as that term is defined in section 1.03 of this chapter, alcoholism or substance dependence as those terms are defined in section 19.03 of this chapter, and the prognosis of such disability, alcoholism or substance dependence; and (iv) any medications with which the person is being treated and their effect on the person's behavior, cognition and judgment.

rights, and assisting counsel"); In re Philip R., 293 A.D.2d 547, 548, 740 N.Y.S.2d 421, 423 (2d Dep't 2002) (affirming a Family Court determination declining to appoint a guardian ad litem where testimony "demonstrated that, despite her mental illness, the mother was capable of understanding the proceedings, defending her rights, and assisting counsel"); Anonymous v. Anonymous, 256 A.D.2d 90, 91, 681 N.Y.S.2d 494, 494 (1st Dep't 1998) (trial court's appointment of a guardian ad litem approved based on "the court's observation of defendant in an apparently chronic irrational and agitated state attributable to alcohol and substance abuse and defendant's consequent and manifest inability to assist his attorneys in his defense . . . ."); Douglas Elliman LLC v. Silver, 49 Misc. 3d 1211(A) (Table), 26 N.Y.S.3d 724 (Table), 2015 WL 6642215 at *4 (Text) (Sup. Ct. Suffolk Co. 2015) (suggesting that appointment of a guardian ad litem may be required "[i]f [defendant] has deteriorated into a 'chronic irrational and agitated state' demonstrating a 'manifest inability to assist' her attorneys in her defense").

In a civil litigation, such as this, many practical problems attend the determination of competence and the appointment of a guardian ad litem. Ideally, the court would be able to engage the services of a mental health professional to examine a potentially incompetent individual and to assist in the determi-

nation of competence. In civil cases, however, there is no source of funds to retain a mental health professional. In addition there is no mechanism to compel a litigant to submit to an examination by a mental health professional. An order could threaten a dispositive sanction if a litigant failed to submit to such an examination, but if the litigant is incompetent, it would be inappropriate to impose such a sanction for his failure to obey a court order that he may not be able to understand. See Krain v. Smallwood, 880 F.2d 1119, 1121 (9th Cir. 1989) ("when a substantial question exists regarding the competence of an unrepresented party the court may not dismiss with prejudice for failure to comply with an order of the court.").

The practical difficulties do not stop there. If the court makes a determination of incompetence, and if the litigant has no family or friends who would be willing to serve as a guardian, where does the court find a guardian ad litem and counsel for the guardian? Even though the Southern District of New York is fortunate to have a panel of pro bono attorneys who are willing to represent indigent litigants without compensation, service as a guardian ad litem for an incompetent is a substan-

tially different (and more demanding) undertaking. And, there are no funds available to the court to pay for such services.[4]

Because there are no funds to pay for an evaluation of plaintiff by a trained professional and no procedural vehicle to compel an examination, I shall follow the informal practice utilized by the New York Courts when confronted with a litigant who may require a guardian ad litem.

When plaintiff appeared before me he was well groomed, appeared clean and was oriented as to space and time. He was able to describe his personal history, discuss his case, identify the relief he was seeking and could understand why his argument for a preference was not persuasive. In subsequent communications, he has displayed a rudimentary understanding of the Federal Rules of Civil Procedure and the federal judicial system; he identified Rule 56 as the rule applicable to summary judgment motions and his description of the appellate process was substantially correct. He also clearly understood the consequences of the appointment of a guardian ad litem and was clear in his

---

[4]N.Y. C.P.L.R. § 1204 permits the court to order an adverse party to compensate a guardian ad litem for his or her services. Assuming the statute would apply in this Court, I do not understand how a defendant, who may have done nothing actionable and who may have no connection whatsoever to plaintiff, should be made to bear the cost of a guardian simply because a claim has been asserted against it by an incompetent individual.

desire to retain control of his action. Based on all of plaintiff's answers to my questions, his demeanor and appearance, and his correspondence to the Court, I conclude that notwithstanding the mental health issues which appear to exist, he is capable of understanding the proceedings and defending his rights. Thus, I conclude that plaintiff is not incompetent and does not require the appointment of a guardian <u>ad</u> <u>litem</u>.

    B. Enforceability of
       <u>the Parties' Settlement</u>

Oral, on-the-record settlement agreements are generally enforceable. As explained by the Court of Appeals:

> It is well established that oral settlement agreements entered into by parties on the record in open court are valid and enforceable. See <u>Powell v. Omnicom</u>, 497 F.3d 124, 129 (2d Cir. 2007); <u>Ciaramella v. Reader's Digest Ass'n, Inc.</u>, 131 F.3d 320, 326 (2d Cir. 1997). Announcing the terms of a settlement agreement on the record in open court memorializes critical litigation events, and serves a "cautionary function" ensuring the parties' acceptance is deliberate. <u>Powell</u>, 497 F.3d at 131. A mere intention to later commit an oral agreement to writing has no effect on the validity of the contract, even when the agreement is never reduced to writing. <u>Winston v. Mediafare Entm't Corp.</u>, 777 F.2d 78, 80 (2d Cir. 1985). . . .
>
> The fact that Plaintiff ha[s] a change of heart between the time the oral agreement was made and when it was reduced to writing has no effect on the validity of the oral settlement. See <u>Powell</u>, 497 F.3d at 129.

Pierre v. Chase Inv. Servs. Corp., 561 F. App'x 71, 72 (2d Cir. 2014) (Summary Order); see also Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam).

"A settlement stated on the record is one of the strongest and most binding agreements in the field of the law and is thus entitled to substantial deference." Pierre v. Chase Inv. Servs. Corp., 10 Civ. 1740 (SAS), 2013 WL 709055 at *3 (S.D.N.Y. Feb. 25, 2013) (Scheindlin, D.J.) (inner quotation marks and citation omitted), aff'd, 561 F. App'x 71 (2d Cir. 2014) (Summary Order).

However, "[p]arties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time." Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007), citing Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997). Four factors are relevant to determining whether an on-the-record settlement is enforceable in the absence of a signed settlement agreement:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

15

Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985); accord CAC Group Inc. v. Maxim Group LLC, 523 F. App'x 802, 803-04 (2d Cir. 2013) (Summary Order); Grgurev v. Licul, 15 Civ. 9805 (GHW), 2016 WL 6652741 at *4 (S.D.N.Y. Nov. 10, 2016) (Woods, D.J.). Application of these four factors weighs in favor of enforcing the settlement.

      First, there was no express reservation by either side not to be bound until a written settlement agreement was executed. Second, there has been partial performance of the settlement. As reflected in the October 7, 2016 declaration of Jose Martinez, NYCHA's Assistant Director of Applications and Tenancy Administration, plaintiff has been restored to the position on the waiting list assigned to his 2013 application.[5] Thus, NYCHA has already performed its half of the bargain. Third, all of the terms were agreed upon; there were no open items after the conclusion of the September 15, 2016 conference. And fourth, there is no information in the record as to whether an agreement to restore an applicant for NYCHA housing to the position he previously occupied on the waiting list is the type of agreement

---

[5] NYCHA provided this application directly to my chambers. It will be filed with the Clerk of the Court contemporaneously with this Report and Recommendation.

that would ordinarily be reduced to writing, and this factor is, therefore neutral.

Finally, plaintiff's most recent correspondence to the Court in which he wishes to have his fianceé added to the waiting is circumstantial evidence that plaintiff now wishes to affirm the settlement.

Because three of the Winston factors weigh in favor of approving the settlement and the fourth is neutral, I conclude that the settlement is enforceable and that the action should be dismissed.[6]

IV. Conclusion

Accordingly, for all the foregoing reasons I respectfully recommend that plaintiff be found competent and that the matter be dismissed with prejudice and without costs on the ground that the parties have entered into a binding settlement agreement.

---

[6]I also note that the settlement is not unreasonable. Although plaintiff may not be receiving a great deal of benefit from the settlement, his claim may well be subject to dismissal. If plaintiff did in fact fail to renew his application for an apartment for reasons unrelated to the alleged discrimination, he would probably be unable to pursue his discrimination claim.

17

V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Paul A. Engelmayer, United States District Judge, 40 Centre Street, Room 2201, and to the Chambers of the undersigned, 500 Pearl Street, Room 1670, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Engelmayer.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:  New York, New York
        December 20, 2016

Respectfully submitted,

*/s/ Henry Pitman*

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Mr. Yehudah Tziyon Ke'ish Mil'chamot
P.O. Box 7764
New York, New York  10116

Nabiha Rahman, Esq.
Agency Attorney
New York City Housing Authority
9th Floor
250 Broadway
New York, New York  10007